3230428 Shawn Lane as Administrator of the Estate of Holly White, Deceased Appellant v. Iroquois Memorial Hospital & Resident Home in Riverside Medical Center, Eppleese Mr. Salve, you may proceed. Thank you, Your Honor. May it please the Court and Councils, we are here today on our appeal as it relates to our motion for leave to amend the complaint to file a Fifth Amendment complaint as well as the Defendant's Riverside's motion for summary judgment related to a parent agency and for the reasons stated in the briefs as well as those reasons I intend to argue here today, we do believe that the trial court should be reversed in both instances. I want to start by going into the core facts of the case that were pled not only in the initial complaint but also in the Third Amendment complaint which was the most recently timely filed complaint prior to the expiration of the statute of limitations. The facts in this case, this medical malpractice case are that Holly White, in excruciating abdominal pain presented to Iroquois Memorial Hospital, she needed care as it related to her abdomen. She didn't get it there. Iroquois ultimately decided that she would be better served at a higher level institution, that being Riverside which was in relative close proximity and able to provide a higher level of care. For example, she needed to be sedated because she was in such pain and so disoriented that she needed to be sedated in order to have a CT scan of her abdomen to figure out what was going wrong. Tragically, and this is one of the keys to the case from the beginning all the way through today, tragically the communication between Iroquois and Riverside was done in such a way that a miscommunication as it related to the performance of a CT scan led the folks at Riverside to believe that a CT scan had been done and was normal when that was actually never done. Documents were not transferred from Iroquois to Riverside which would have made that clear. Riverside did not follow up in obtaining those documents. Any potential imaging that had been done or any documents that would have been in Holly's medical chart, it was not followed up on, it was not obtained by Riverside. Iroquois didn't send it and because of this miscommunication, Riverside was under the false impression that Holly White had a normal CT scan. Thereafter, Riverside through their employees and agents, namely nurses and doctors who we allege are parent agents, failed to recognize that her symptoms in her abdomen were worsening which thereby should have prompted a CT scan. What was going on throughout that period of time is her bowels were strangulated, becoming necrotic. The tissue was literally dying such that the contents of her bowel spilled into her abdomen causing a deadly infection, a fatal infection. Now under the umbrella of the allegations that the plaintiff brought from the beginning in the third amended complaint and are simply amplified in the fifth amended complaint really fall into those two categories. One being the failed transfer and one being Riverside's failure to identify that Holly's condition had been worsening and quite literally a reading of the allegations in the proposed fifth amended complaint for which we moved for leave. Quite literally, those allegations of nursing negligence and institutional negligence in the fifth amended complaint sometimes word for word but at a minimum, at a minimum, conceptually the same as what was in the third amended complaint related to the poor transfer as well as Riverside's failure to identify a worsening and deteriorating condition. And so we look of course to the case history and assess relative to the Loyola factors whether we should have been allowed to amend the complaint with the fifth amended complaint. And so the amendments are important and they tell a story here. First of all, the first amended complaint that we filed was in response to a motion to dismiss from Iroquois. Iroquois had actually put in a motion to dismiss that we had institutional claims in the body of our complaint but had not put it in the 2622. We didn't fight the motion to dismiss, we didn't brief it and ask for a hearing, rather we sought leave to amend and we confirmed in the 2622 that there was indeed an institutional claim being made and supported in the certificate of merit. Not that we necessarily believed that legally we had to do that but it was the path of least resistance and it made very clear to everyone in this case that when in the initial complaint that we filed and as it existed in the third amended complaint that we were pursuing institutional claims. And so the first amended complaint was filed amending the 2622. The second amended complaint was filed adding several respondents and discovery but without changing the core of the facts within the complaint. Now the second amended complaint actually our leave was granted at a time when we immediately found about potential new defendants and so in reviewing the record I'm not sure we even filed the second amended complaint. We filed a motion for leave to file the third amended complaint to add two additional defendants who we learned in the interim just right at the same time had a corporation for which one of the doctors was was potentially working and so we filed the third amended complaint which mirrored the second amended complaint with an additional personal corporation of one of the doctors. And then finally the and that was right before the statute limitations. The fourth amended complaint came some months later after we had decided whether to convert or terminate respondents and discovery that we had added in the second and third amended complaint. But again the core facts remain the same. And so what took place during the course of that time relative to discovery in this case. Well first of all what's important for me to point out to you your honors is that multiple depositions were taken after the fourth amended complaint was filed. Dr. Issa, Dr. Noakudu, the nurse Shriver, the the plaintiff at the time Sean Lane, it's now Holly White's son Garrett because he's now of the age of majority. He was not at the time of the initial filed complaint. Ashley Marcano, a nurse. 20681 witnesses from both Iroquois and Riverside. Dr. Pyle and Dr. Trucco. Critical depositions. We had to move to compel discovery from Riverside. This is all reflected in the record three times. We proposed we propounded discovery August of 2019. They didn't answer that for a full year. We had to go in on a motion to compel. We propounded discovery March of 2020. They didn't answer it for a full 13 months. We had to go in on a motion to compel. We propounded discovery on October of 2021. They didn't answer it for four months because we had to file a motion to compel. And all of that discovery, and it's all reflected in the record in our motions to compel, all of that discovery was pursuing additional information relative to policies and procedures on transfer, relative to abdominal exams, and what's available in the medical chart in terms of drop down boxes. All things that relate to those two big buckets that this case has always been about. And so that is what took place throughout that time. And then it was in October of 2022 that we filed our rule 213 disclosures with our experts. Mr. Stalvey, what would you point to specifically in the complaints one through four that would speak to nurse malpractice, for example? Absolutely, your honor. So for nursing malpractice, I think when we look at the complaint as a whole, we do see in the third amended complaint, which is our last complaint before the expiration of statute of limitations, that we talk about how in paragraphs 15 through 17 that Riverside, particularly 15, that they had various healthcare providers, physicians, nurses, nursing assistants. So nurses is listed in paragraph 15. Then in paragraph 48, as it relates to Iroquois, and then as it relates to Riverside, it's paragraph 79. Both of the institutions are criticized and quote, as an institution and through the acts and omissions of its duly authorized employees, plural, agents, plural, and apparent agents, including Dr. Nwakudu or Dr. Issa. And so the employees, as set forth earlier in the complaint, include nurses. And the items within these counts, in other words, the subparagraphs as to the allegations of negligence, speak to items that the defendants themselves know are both potentially nursing responsibilities as well as physician responsibilities. For example, failed to document that Holly had not received a CT scan of her abdomen. Failed to notify Riverside that Holly had not received a CT scan of her abdomen. So those are two items, for example, where the documentation and communication with Riverside between the two institutions, as we learned through discovery, is handled by, among other people, nurses. In addition, failed to advocate for Holly. That allegation, which is paragraph 48, subparagraph D as to Iroquois, and paragraph 79, subparagraph F as to Riverside, failed to advocate. Quite literally, the language mirrors in the Third Amendment complaint as the Fifth Amendment complaint relative to what is now a broken out count specific to nursing negligence in the Fifth Amendment complaint. And so for the defendants to claim any sort of surprise or prejudice that were critical of the nurses is belied by the record in this case. In addition to that, I would also point out that in the Porter case, when the Porter plaintiff was allowed to amend the complaint and there was a relation back question, in that particular case, the term in the count as the plaintiff criticized the institution was that they were critical of the institution as it related to nurses and other health care providers, but did not say doctors, and did say, quote, and others, and others. And the court referenced that portion of the plaintiff's timely filed complaint when saying in the later complaint, when Dr. Cross, the radiologist, and this was for the first time that a radiologist had been criticized in the Porter case. It was the first time that a radiological image had been referenced in the complaint, but it was an amplification of the prior allegation that said that the institution had failed to identify a deterioration of the plaintiff's neurological status. And so in the later complaint, it was simply an amplification of that allegation to add Dr. Cross's misread of the radiology, even though specifically a doctor, specifically a radiologist, and specifically a radiological image wasn't even in the prior complaint. But because of the standards for pleading, and because of the fact that it was sufficiently close in terms of its relationship time-wise, and in terms of because of the fact that it clearly was the same transaction or occurrence, that plaintiff was allowed to amend, and those allegations did indeed relate back. So you're saying that this is really an amplification? Yes, Your Honor. And one of the reasons it's an amplification, and I think a plain reading of the fifth amended complaint would show that, is that in the third amended complaint, what was pleaded was in some instances more broad, and in some instances a little bit more specific. But certainly as we learned more throughout discovery, but very importantly in a malpractice case, once we had all of the information, especially in a he said, she said case like this, where one deposition, you learn one thing, and another deposition, it's someone gives testimony that's diametrically opposed to what you just believed you thought you learned. We have to have experts review these matters. And so the amplification of the allegations in the third amended complaint that we see in the fifth amended complaint, which track our experts' opinions, was only after significant discovery had not only been obtained, but then reviewed by our experts. We have six experts and nearly 60 pages of substantive disclosures on their behalf. There is significant amount of information in this case, even though it quite literally is as simple as I said at the to address a deteriorating condition. And so the details and the specifics as it relates to what's pleaded in the fifth amended complaint, yes, your honor, are absolutely an amplification. And I think it's very important to point out that there's been no prejudice. And so the prejudice that is the most important Loyola factor, it's the most important Loyola factor of the four, is was there prejudice? And there's not prejudice. Prior to the expiration of the statute of limitations, we propounded discovery on these exact issues in addition to what was already contained in the complaint. In late 2020, defendant Riverside disclosed as witnesses the two nurses who we ultimately were critical of in the fifth amended complaint and disclosed them in their disclosures to testify that they themselves will offer the opinion that complied with the standard of care. And so they absolutely were aware that the nurses conduct was at issue even at that time. Why else would they disclose that material? There's been nothing articulated by the defendants in their briefs that established prejudice. There's no trial date. There was no request to reopen discovery. The length of time is in part a failure of the defendants to produce witnesses and written discovery for us in terms of the amendment complaint with the amplifications. But it's really neither here nor there, given the very close tracking that the amended complaint, the fifth amended complaint has with the third amended complaint. And so there's no reason for the defendants to claim prejudice when they knew from the beginning, nursing conduct and institutional conduct was at issue and the discovery absolutely was driven towards those issues. And so in matters such as this, the trial court must exercise discretion liberally. And I see that the red light has come on. So your honors, I'll stop. Okay. Thank you. Uh, questions from the bench at this time. I do have a couple of questions. Mr. Salvi, there's an emergency motion that you would file regarding the disclosures. Uh, defense is objecting to that based on the fact that they, uh, they had responded that judge Parker's did not review those disclosures and making their decisions and suggest that we should not either because of that. What is your response to that? Um, uh, your honor, my response there is, uh, first of all, uh, we do not forfeit, uh, these types of specific arguments, um, uh, in the appellate court by virtue of that, not being put before judge Parkhurst. Um, so I don't think there's a forfeiture issue. Um, and it was, uh, through mirror and advertence that the certificate of service for this particular, uh, filing had been in the record, but unfortunately not, uh, the underlying document where, as I just mentioned, nurses Schreiber and Rivera are disclosed as offering opinions that they complied with the standard of care. And so irrespective of whether judge Parkhurst was able to review this or not, um, I think it's further evidence that the defendants were well aware that was at issue and appropriate for the appellate court to consider even if the trial court, uh, did not. And in addition to that, I would point out your honor that judge Parkhurst relied upon McClory and Widener and cases that were pre Porter. Um, and in relying on cases that were pre Porter and quite literally factually, uh, opposite to Porter, I'm not sure it would have made a if judge Parkhurst would have seen this document one way or another because the underlying legal analysis was faulty, which is why we believe the standard of review on this issue is really de novo, even though we understand that traditionally whether to amend is an abuse of discretion, uh, but certainly not following the law is by definition an abuse of discretion. So that's why either way we believe we should prevail. Okay. Further questions? Any? No. Thank you, Mr Salvi. You'll have time in a reply. Thank you. Mr Sampson, I believe you wish to proceed first. Oh, your audio is off. Thank you. Uh, I appreciate it. Don Sampen on behalf of Iroquois Memorial Hospital. Um, I have just 7.5 minutes, so I'm not gonna be able to say too much about Mr Salvi's positions here. But let me at least get as far as I can with respect to some of these Loyola factors, which he addressed. The first factor that Loyola talks about is whether or not the amended complaint is an attempt to cure a defect in a prior complaint. The tradeoff here, as I understand it, is between an amendment that cures a defect and one that simply adds new allegations, especially factual allegations. The courts are sympathetic to the former, not so sympathetic to the latter. The plaintiff here seems undecided as to whether or not he's a defect. He seems to be leaning in favor of the fact that there was no prior defect. And so at least to that extent, that factor does not weigh in favor of allowing the amendment. Let me turn to perhaps a more important factor, and that is prejudice. The trial court here made specific findings with respect to surprise and prejudice. Of course, Mr Salvi argues that we knew or should have known about the new allegations that were going to come down the line from the outset, or at least as of the third amendment complaint. The fact is we didn't know what those allegations would be. And when I say that, when I say we, I'm talking on behalf of Iroquois, but Riverside, I know, was in exactly the same as Iroquois. As to Iroquois, the specific allocations in the third amendment complaint were that Iroquois and Dr. Navakudu, I think that's how you pronounce his name, were negligent and their failure to order a CAT scan of the defendant, of the decedent during the few hours that she was resident at the Iroquois hospital. It further led to Dr. Navakudu was an employee or agent of Iroquois, and they therefore say that Iroquois itself is liable for the same failure as Dr. Navakudu. The same expert certification was used as to both of these defendants from the first, second, third, and fourth amended complaints. The new allocations in the proposed fifth amended complaint are different in form and substance, and I'm going to rely upon our brief for the exact specifics of those new allegations, but in general, let me just say that they had to do with different actors, different actions, different expert certifications, different forms of proof, and an entirely different character than the allegations made against Iroquois and up through the fourth amended complaint. The trial court specifically found that there was nothing in the prior certifications, there was nothing in the prior complaints that put us on notice with respect to allegations against nurses or administrative personnel, and there was nothing, no reason for either us or Riverside to anticipate the later allegations. Mr. Salvi, of course, says otherwise. He talks about allegations in the third amended complaint that were with respect to Iroquois, quote, as an institution. He further points to allegations that we acted through our employees, plural. The fact of the matter is that the certifications in support of those allegations in the first four amended complaints didn't talk anything about employees. They talked about a alleged employee or agent, and that was Dr. Nawakatu, and as it turns out, he was not, in fact, an agent or employee, as the trial court subsequently found. So the certification, the complaint allegations went beyond the certification, and it's a certification that governs here, not the complaint, because this is a medical malpractice action. In any event, generalized allegations like as an institution or employees tells us nothing about the allegations that might be made later, and apparently the theory here is that because they use the words as an institution, we somehow became aware of any and all forms of negligence that the plaintiff's counsel might ultimately decide to allege through as yet undisclosed experts three or four years down the road. They've cited no authority in support of that proposition. I know of no such authority. It's a false proposition, and it ought to be rejected. Now, as to other forms of prejudice, I think it should be obvious as to what the prejudice is, but we've discussed it at length in the trial court, and in our briefing here, we talked about the added expense necessary to retake depositions and reopen discovery, because our discovery strategy up until that time through the third amended complaint was to focus on the allegations that were actually made against us. Throughout the 15 or 20 depositions that were taken in this case, we did not attempt to elicit facts regarding the parameters of the standard of care as applicable to nurses or administrative personnel as to any particular area of their responsibilities, and one of the reasons we did not is because we didn't have the experts on board to help guide this discovery process, and we didn't have those experts on board because we didn't know what the allegations were going to be three or four years later through different experts. It turned out that the plaintiff here came up with two sets of allegations to which they signed an expert for each set of allegations in the proposed fifth amended complaint. We had no way of knowing what those allegations were going to be. In other words, we would have had to start from scratch with respect to these new allegations, and that is a sufficient form of prejudice that the courts have held that there was no abuse of discretion in denying leave to a man. The plaintiff argues in the brief here that the amendments in question were offered during the pleading stage. I don't understand that. I guess it's a matter of what is the definition of a pleading. If we look to the Code of Civil Procedure Part 6, Part 6 talks about pleadings and they talk about complaints, answers, counterclaims, motions to dismiss. None of, no responses to those types of pleadings were outstanding in March of 2023 when the leave was sought to file the new complaint. So it is false to say that these allegations, these new allegations were attempted to be made during the pleading stage. So far as the proposed amendments, the trial court found specifically that there was no newly discovered evidence put forth by the plaintiff that would justify these new allegations. The one Iroquois nurse that they identified in their complaint, a guy by the name of William Baker, had his deposition taken in January of 2021, and there was nothing new about what he had to offer. In March of 2023, with respect to what was placed in the proposed Fifth Amendment complaint. I see that my time is up here. I'm happy to answer any questions that you have. Questions from the bench for Mr. Sampson? As it relates to the emergency motion, Mr. Sampson, do you have any response to Mr. Salve's argument that we should review the disclosures that were made? The disclosures really had to do with Riverside, Your Honor, because they weren't addressed or reviewed by the trial court. I think it's inappropriate to admit those on appeal, but I'll let Mr. Goldstein address that further. Thank you, Mr. Sampson. Mr. Goldstein, you may respond. Thank you, Your Honor. Jake Goldstein on behalf of Riverside. With my limited time, I too intend to actually focus on the summary judgment ruling, mainly because our positions, the defendant's positions are in line on the motion to amend. I don't want to waste my time rehashing what Mr. Sampson had already presented to the court. But before I get to the summary judgment, I do want to address the court's last question to Mr. Sampson about the disclosures and a couple of points that plaintiff has presented in support of his arguments on the motion for leave issue. Now, with respect to the emergency motion, quite simply, we believe it is an improper attempt to supplement the record with a document that was never made part of the record in the first place. Secondly, this is the standard review on the motion for leave to amend is abuse of discretion. It would be improper for this court to consider and judge the trial court's exercise of her discretion in denying that motion based on evidence that plaintiff failed to present to her at that time. And so really for those two principal reasons and for the other reasons we set forth in our response to that motion, we think it's improper and their motion should be denied. Now, with respect to the no prejudice argument, I just wanted to add that part of the is that these vague and general allegations relating to employees, agents, et cetera, without identifying either a specialty or by name, by conduct, by specialty or otherwise, that type of allegation leaves the defendants to guess as to where plaintiff is going with his complaint. But we have that cleared up in this case, in fact, because when you look at the 2622s, as Mr. Stampin stated earlier, those 2622s specifically and explicitly limit their criticisms to individual employees, one in particular in each of the 2622 certificates, the co-defendant doctors. And so when a hospital is presented with a complaint like that, we are required to read it together with the 2622 report. And when you do that, that's certainly clarified to the hospitals that they were not seeking to allege that general allegation was actually more specific and that it was relating to those individual doctors only. The 2622 reports did not contain any mention of nurses or communication issues by nurses or anything that would otherwise put us on notice that that was where plaintiff was going to try to hold up the hospitals liable for their conduct. And so when you look at them as a whole, even the third amended complaint and the amended 2622s, they just simply never advised us that they were going to try to seek liability on the hospitals based on conduct of anyone other than those physicians. Now, with the disclosure issue, and I believe plaintiff also made this argument, I think in their reply about the nurses testifying that they complied with the standard of care and the disclosure saying that they complied with the standard of care. For 20 years, I was always trained before I became a solely appellate lawyer, that even where in a case you do not have allegations against a nurse, it's worthwhile to get that opinion in there to one, discourage the plaintiff from amending the complaint to add such a claim. And also in the future, if that attempt is made, you have it locked in and you don't need to worry about a dispositive motion being brought. Those were not added in there because there was any belief that there were nursing allegations against the hospitals at that time. And so it simply is inaccurate for plaintiff to suggest that that's why those were there. Now, turning to the summary judgment, plaintiff has effectively challenged the holding out argument with three primary arguments. First, that the disclaimers in the old, in the five old forms, while those were all unequivocal and clear in disclaiming the any agency relationship, the disclaimers in the new forms were not. And he claims that they're not because of language, the there will be preface to the disclaimer paragraph, that that suggests in his mind that there won't be also. But it ignores the such as clause. And what follows the such as clause is where the form specifically links the independent contractors to specific specialties. And by doing that, just as this found or discussed in Steele about Turkey, by doing that, it was enough in Turkey to show that the plaintiff knew or should have known that that their physicians were not employees or agents of the hospital. And so when you look at that, that such as clause that tells you the specialties, emergency room physicians are not employees. That's Dr. White. Hospitalists are not employees. That's Dr. Issa, you know, consulting physicians and hospitalists and hospital based physicians. That's Dr. Impali. Who are they? Employees of Mr. Goldstein, employees of their their independent physician groups, your honor. And forgive me, I don't have the names of those groups on top of mine at the moment. No, no. I just want to know status. That's all. And just so you know, your honor, the plaintiff does not contest that they are not that they are actual agents of the hospital, that they agree that they're not. They didn't contest that in the in the briefing below, and they didn't contest it in their briefing before this court. So that issue is not not before this court. And secondly, you know, I'd like to go to the reliance element very quickly. I see my time is almost up. This case is on all fours with Steele. You have the only piece of evidence of Miss White's reliance on the hospital is the consent forms that she signed on all nine occasions. And five of those consent forms contain the almost verbatim the same language that this court found in Steele was I want to get the language accurate here were definitive indicators that she was not relying on the hospital or vicariously on the employee status of the MDs and see of the physicians and senior care. I see that my time is up. May I briefly conclude? Yes, please do. Thank you for your time today. Your honors, we respectfully request for all the reasons we've stated today, both Mr. Sampson's arguments and mine as well, that this court firm, the circuit court's findings that lead to amend is that should be denied, and that summary judgment should be affirmed. Thank you. Questions from the bench, Mr. Goldstein. Is there anything in the record that explains why there was a change in the disclaimer? No, there isn't, Your Honor. And I don't know that information. Thank you. No. Okay. Very good. Thank you, Mr. Salvi. You made a reply. Thank you. Thank you, Your Honor. Just really quickly on Turkey. That was just mentioned. The Turkey language is much stronger than the disclaimer. The consent form in this case of reading of that opinion reveals that immediately. In this case, the language is ambiguous. There will be it does. That sentence doesn't refer directly to physicians that will be treating Holly White. And the such as clause is ambiguous. And so it needs to be construed against the drafter. It is not the clear, concise language that's necessary. It's more like Schrader and Williams than other cases that have allowed for summary judgment. In addition, I think what is important as it relates to reliance is both the Fessy case and the Monty case where it doesn't only have to be the patient who is pursuing care to rely, but also the physician. And that exists in this case with Dr. Nwakudu. His deposition testimony makes clear he was relying on Riverside to provide a higher level of care, as well as the people that were with Holly. Holly, of course, passed away. And her son gave testimony as it related to their reliance on Riverside. And so it's more consistent with those cases. And then relative to the form itself, very important. One of the cases the defense cited was Brown. And of great import is the portion next to the disclaimer on the employment of the physicians where it needs to be initialed. And that little blank spot exists here. And it was not initialed. The consent form wasn't signed by the decedent. So there is no presumption that she read it. It's a verbal consent order signed by somebody from the hospital who we don't know. In the SIR reply, the defendant, Appali, makes it sound as though it is our obligation to refute that the informed consent form has evidentiary value. It's their obligation to bring that evidence forward to defeat a parent agency. And what we have here is a consent form that is there is no evidence. And at least there's at least an issue of material fact as to whether it was was it read to Ms. White? Did she read it herself? Was that section read? Why is it not initialed? Nobody wrote anything there. Holly didn't initial it. The person reading it or providing it to her didn't initial it. And so that creates a genuine issue of material fact as it relates to the informed consent document, which is not sufficient to allow for summary judgment. To transition now back to the motion for leave to amend, one reason we know that Riverside absolutely was aware that we were pursuing a case over and above and not only for alleged apparent agents is they filed their summary judgment motion fashioned as a partial summary judgment because they knew that if they won that summary judgment, that there were other claims that existed other than those just directed as alleged agents. And so what Mr. Sampin and Mr. Sampin did is they filed a case in which they didn't have a 2622. Of course, they didn't have a 2622 in the timely filed complaint criticizing a radiologist. Of course, they didn't have a 2622 referring to radiology scans. The 2622 in that case would have at best referred to the deterioration of a neurological condition, which the Supreme Court found was sufficient to allow the plaintiff to then amend and allow our evidence and allegations of negligence against the alleged apparent agent radiologist. So the argument that it's a new actor with different forms of proof in the form of different experts, that is not important. That is of no import. Porter makes that very clear. What is important is whether we pass the sufficiently close relationship test and whether it's the same transaction or occurrence, and quite clearly it is. And the factors within the Porter case that speak to whether there are the three factors within the Porter case that say here are instances where it doesn't relate back. If it's different in time, if it's an altogether different theory, there are cases, for example, the asbestos case where the defendant cited the asbestos case, United Conveyor, where it says the plaintiff had initially brought claims as it was a deck action to say that the insurance, their insurance policy should cover claims against them for asbestos. And then they lost on summary judgment. So then they went back and they filed something totally different. And they said, well, you're actually, you should be waived and you should be, or you waived and you should be stopped from bringing these claims because you've been covering us for all these years. Those are totally different. What we're talking about in this case are allegations of medical malpractice that took place between May 2nd and May 6th. They're clearly set forth in the third amended complaint and they quite clearly relate back. And the plain language of the complaint say that I see I've run out of my run out of time. Yep. Thank you, Mr. Salvey. Questions from the bench. Any questions? No. No. A respondent discovery in the case was dismissed. Is that correct? I'm sorry, justice. How do I, I could not hear you. I apologize. No, I think I'm having a little difficulty. Um, my microphone here. Can you hear me now? Yes. Yes. Rivera nurse Rivera was a respondent discovery, correct? She was, she was later dismissed as a respondent discovery and not added at that same time. Correct. She was not added as an individual defendant at that time. That is correct. But she is added in the fifth amendment complaint, not as an individual defendant. So similar to the Porter case where Dr. Cross was not added as an individual defendant allegations against the hospital in the Porter case, then later included Dr. Cross as an apparent agent. Here, there's no dispute. Nurse Rivera is an employee of the hospital and the allegations are more specific, um, amplified in the fifth amendment complaint as to nurse Rivera's, uh, uh, conduct. Um, so I hope that answers your question, your honor. Other questions? Well, thank you counsel, all three for your arguments in this matter. This matter will be taken under advisement and a written disposition shall issue.